Mary Flanagan et al., Appellants, v. Madison Square State Bank et al. Logan L. Mullins and Walter P. Murphy, Appellees.

Gen. No. 39,609.

Opinion filed January 31, 1938. Rehearing denied February 14, 1938.

AARON SOBLE, JOHN C. DEWOLFE and ROBERT E. DOWLING, all of Chicago, for appellants; MAX CHILL, of Chicago, of counsel.

WALTER P. MURPHY, *pro se* and for appellee Logan L. Mullins; WALTER WM. PEARSON, of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal plaintiffs seek to reverse an order entered by the superior court of Cook county April 23, 1937, wherein Logan L. Mullins, receiver, was allowed $1,360, Walter P. Murphy, his solicitor, $2,500, and Aaron Soble, John C. DeWolfe and Robert E. Dowling, plaintiffs' solicitors, $3,860 "on account" of services rendered by them respectively in a stockholders' liability suit.

June 15, 1932, Mary Flanagan and a few other small creditors of the Madison Square State Bank filed their

bill on behalf of themselves and other creditors, against the former and final stockholders of the bank, to enforce the superadded constitutional liability of the stockholders. The same day and at about the same time Leonard F. McGee and John P. Harrington, who claimed the bank was indebted to them for $205, filed a similar bill. Upon the filing of the bills the court, on the same day, June 15, 1932, appointed Logan L. Mullins receiver, and enjoined all other creditors of the bank from prosecuting any suit at law or in equity to enforce the liability of the stockholders. July 21, 1932, upon stipulation of counsel for plaintiffs in the two suits, an order was entered consolidating the causes in a single suit, and it was ordered that the receivership of Mullins be extended and he was authorized to function in the consolidated cause. January 22, 1937, a decree was entered fixing the liability of the stockholders of the bank, and an additional decree was entered February 11, 1937, fixing the liability of certain other stockholders.

The record discloses that prior to and after the entry of the decree the receiver, Mullins, collected from the stockholders sums aggregating $38,552.41, and on April 1, 1937, filed his second current report and account reporting to the court what he had done, and advising the court that neither he nor his solicitor had received any fees on account of the services rendered, and prayed that the report and account be approved and that reasonable compensation be awarded to him for his services and those of his solicitor. Attached to and made a part of the report is a detailed statement of the services rendered by his solicitor, showing the first services were rendered June 15, 1932, and the last March 31, 1937, such services taking 882½ hours. April 23, 1937, plaintiffs filed their petition in which they set up the filing of the suits, the appoint-

ment of the receiver, and that a decree was entered against some 150 defendants for an aggregate amount of $550,000, of which the receiver had collected about $39,000 in cash; that they had employed solicitors to represent them, who had expended 1,031 hours in the preparation and trial of the case; that it would be necessary for them to render considerable more legal service before the matter was terminated, and that the solicitors had received no compensation to date. The prayer was that an order be entered fixing an allowance for fees for the solicitors and directing the receiver to pay them out of the funds in his hands. Attached to the petition is an itemized statement showing the work done and the time taken by the solicitors which, as stated, aggregated 1,031 hours. On the same day plaintiffs filed objections to the receiver's second current account and report and objected to the allowance of any fees to the receiver for his solicitor and to any allowance to the receiver himself, except a mere nominal amount. The matter was heard by the court, the order entered, and the appeal is before us.

Plaintiffs' position, as stated by their counsel, is that "complainants base their objections to any allowance of fees to the attorney for the receiver on the ground that this is a statutory proceeding under section 11 of the Banking Act, and that the receiver is not permitted by statute to employ counsel, and is not allowed to be reimbursed for counsel fees for himself. In the event the court is of the opinion that the attorney for the receiver has been properly appointed, and that there is provision for his appointment, that the attorney for the receiver has performed no legal work for the receiver which the receiver himself could not have performed, and that the items set out in his schedules are all superfluous and unnecessary and could have been performed by the solicitors for the complainants. . . .

"The attorneys for the complainants have brought a fund into being for the benefit of the creditors of a closed bank, by a statute under which this proceeding has progressed. The complainants' solicitors are entitled to be reimbursed from that fund and the reasonable amount to be paid them should be a sum of at least 20% of the total amount collected."

The record discloses that on February 18, 1933, an order was entered which recites that the matter came on to be heard upon the motion and petition of the receiver, "for leave to employ counsel, and upon notice to solicitors of record." And it was ordered that leave be granted to the receiver, "to employ WALTER P. MURPHY as his counsel in the above entitled causes."

It further appears that Murphy began to render services to the receiver June 15, 1932, and that he had put in 94 hours before the order of his appointment; but we think it apparent that counsel for plaintiffs knew that Murphy was rendering services for a considerable period before the order authorizing the receiver to employ him was entered. The record further shows that although counsel for plaintiffs knew that Murphy was rendering services for the receiver, no objection was made that he was not authorized to do so until the second current account and report were filed April 23, 1937, at which time the receiver and his solicitor were asking for an allowance of fees. Under these circumstances, we think it clear that counsel for plaintiffs ought not now to be permitted to say that neither the receiver nor his solicitor should be paid.

We are further of opinion that the court was warranted in entering the order authorizing the receiver to employ counsel. Section 11 of the Banking Act, Ill. Rev. Stat. 1937, ch. 16½; Jones Ill. Stats. Ann. 10.11 provides: "When any banking association, organized under this Act shall have gone into liquidation under the provisions of this section of the Act, the individual

liability of the shareholders provided for by section six (6) of this Act may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and all other creditors of the association against the shareholders thereof, in any court having jurisdiction in equity for the county in which such bank or banking association may have been located or established.

"The court in which such suit is instituted may appoint a receiver and require of him such bond and security as seems proper for the purpose of collecting, receiving and disbursing the amounts due from the stockholders on account of their ownership of the stock of said bank. Said receiver shall have authority upon the order of the court appointing him to employ such auditors and assistants as may be necessary to establish and recover the liabilities of the stockholders, and may, with the approval of the court enter into compositions with insolvent stockholders; if any. The costs of such proceedings, including reasonable solicitor's fees for complainants' solicitors, and other necessary expenses of collection, may on the order of court, be paid out of the funds collected by said receiver." From this section it is clear that the receiver would need the assistance of an attorney. While the receiver would have nothing to do with the case so far as establishing the individual liability of each stockholder was involved, it would be his duty to take proper action in case any of the stockholders who were insolvent sought to have their liability fixed and determined and the suit disposed of as to them. And it appears from the record that a great number of objections were filed by the receiver seeking authority to settle with such stockholders, and many orders were entered granting the prayers of the several petitions and the suit was

disposed of as to certain stockholders. We think it obvious that the receiver would not be qualified to do this work and many other necessary things without the aid of an attorney. While the statute above quoted expressly authorized the payment of a solicitor for plaintiffs out of the funds collected, and does not expressly mention the solicitor for the receiver, it provides that "other necessary expenses of collection" may be paid out of the fund. But counsel for plaintiffs say such legal services as a receiver might require, "could have been performed by the solicitors for the complainants." From this we assume that counsel mean to say that they should have been awarded all the fees earned by the solicitor for the receiver. The statute authorizes the filing of suit against the stockholders by the creditors of the bank ostensibly for the benefit of the creditors and not for the benefit of the solicitors for plaintiffs, although this fact appears to have been frequently overlooked. So it is immaterial to the creditors whether the attorneys for plaintiffs receive all the fees, or whether part of them go to pay the attorneys for the receiver. Of course there must be no duplication of services rendered by counsel, and neither should be paid for services which are not necessary. We think situations might arise where the receiver ought to be represented by independent counsel and not those representing the plaintiffs, because the interest of the plaintiffs and of the receiver might sometimes be conflicting.

Complaint is also made that the court erred in making an allowance to the receiver without hearing evidence as to the services performed by him. When the matter was on hearing, counsel for plaintiffs said they desired to put the receiver on the stand to show the services he had performed,—wanted to show that the payments to the receiver were voluntarily made, and

that the amount the court indicated he was going to allow was too much. We think the court should have permitted counsel to go into this matter, although the record is not clear that the receiver was in court or that counsel desired a continuance of the case. But since it appears that the fee awarded to the receiver was only "on account" the question can be considered fully in subsequent proceedings, where the matter can be gone into.

The order of the superior court of Cook county is affirmed.

*Order affirmed.*

McSurely and Matchett, JJ., concur.